UNITED STATES of America, Appellant,

v.

Harry RICHMAN, Defendant–Appellee.

No. 1515, Docket 95–1682.

United States Court of Appeals,
Second Circuit.

Argued May 8, 1996.

Decided Aug. 28, 1996.

Paula Schwartz Frome, Great Neck, New York (Richard S. Kestenbaum, Kestenbaum & Mark, Great Neck, New York, of counsel), for Defendant–Appellee.

Before: CARDAMONE, ALTIMARI, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal from a sentence following a judgment of conviction in a criminal case asks us to determine whether "sophisticated means" were used to impede discovery of a tax-evasion scheme. *See* United States Sentencing Commission, *Guidelines Manual* § 2T1.1(b)(2) (Nov. 1992) (U.S.S.G. or Guidelines). In light of our decision today in *United ed States v. Lewis,* 93 F.3d 1075 (2d Cir. 1996), a case argued in tandem with the instant case, we vacate the sentence imposed and remand the case for resentencing.

## BACKGROUND

Between 1985 and 1993, Harry Richman, a medical doctor and a resident of New York, employed Abrams Associates, an accounting firm, to prepare his income tax returns. Abrams Associates was owned at different times during this period by three co-conspirators, none of whom are charged in Richman's criminal prosecution. According to an information filed by the government, Richman and these others conspired to defraud the United States government by evading a substantial part of the income tax defendant owed.

The facts concerning the nature of the conspiracy are not disputed. Abrams Associates instructed Richman to draw checks (Escrow Checks) on his business bank accounts payable to fictitious individuals and entities, such as "Dr. Shuman Fu," "Dr. P. O'Leary," "UJA," "St. Paul," and "VA Medical Associates." These Escrow Checks were deposited into bank accounts (Satellite Accounts) that had been opened in the name of the nonexistent payees, creating the appearance that Richman was making actual payments to legitimate businesses and charities.

The funds in turn were transferred from the Satellite Accounts into a second set of

Lewis J. Liman, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Alexandra Rebay, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellant.

bank accounts (Operational Accounts). Abrams Associates then used 90 percent of the money in the Operational Accounts to pay Richman's bills, such as his child's tuition at Skidmore College, his personal investments, and miscellaneous living expenses. Although no actual payments were made to a business that would entitle the taxpayer to claim a deduction or to any charities, Richman falsely claimed $294,000 as tax deductions between 1984 and 1991. He also wrote $6,000 in Escrow Checks in 1992, but never claimed these as deductions because the Internal Revenue Service (IRS) uncovered the tax-evasion scheme before he filed his return. During this eight-year period, Richman wrote 267 Escrow Checks to 32 different fictitious entities and persons, thereby evading $84,000 in federal income taxes. He and 26 others have been charged with tax offenses arising out of the Abrams Associates operation; all but five have pled guilty.

Defendant Richman entered into a written plea agreement on February 1, 1995, in which the government agreed to accept a guilty plea to both counts charged in the information. First, defendant pled guilty to violating 18 U.S.C. § 371, which prohibits individuals from participating in a conspiracy to defraud the United States. Second, he pled guilty to attempting willfully to evade income taxes imposed pursuant to the Internal Revenue Code, a violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.

The plea agreement provided that the 1992 version of the United States Sentencing Guidelines—references to Guidelines provisions are hereafter to the 1992 version, unless otherwise specified—would govern sentencing, as it was more lenient than the current version and avoided any *ex post facto* problems. The parties stipulated that Richman's base offense level should be 12, and they further agreed that the defendant demonstrated acceptance of responsibility for his crimes, thus reducing his offense level by two levels pursuant to U.S.S.G. § 3E1.1(a). The parties acknowledged that as Richman had no prior convictions, his criminal history category was I. Defendant also agreed to file amended returns for 1984–1991 and to pay appropriate taxes and penalties.

The agreement specifically stated that it included no stipulation on the question of whether "sophisticated means" were used in this tax-evasion scheme. If—as the government contended—such means were employed, the defendant's offense level would receive a two-level increase pursuant to U.S.S.G. § 2T1.1(b)(2). This specific offense characteristic states that "[i]f sophisticated means were used to impede discovery of the nature or extent of the offense," the offense level should be increased by two levels. The commentary explains that " '[s]ophisticated means[ ]' . . . includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied for example, where the defendant used offshore bank accounts, or transactions through corporate shells." U.S.S.G. § 2T1.1, comment. (n. 6).

Richman's plea allocution was conducted on April 6, 1995 in the United States District Court for the Southern District of New York (Leisure, J.). After his guilty plea, but before sentencing, the Probation Department's Presentence Report recommended applying the "sophisticated means" enhancement. At Richman's October 31, 1995 sentencing, the district court heard argument on this issue from both parties.

Reading its decision into the record, the district court relied heavily on Judge Scheindlin's decision in *United States v. Lewis,* 907 F.Supp. 683 (S.D.N.Y.1995), noting its agreement with her decision. It stated that in its view the accountants in this case engaged in activities that would fall within the sophisticated means enhancement. The trial court explained that the major players in any attempt to impede discovery of the scheme were the accountants and the accounting firm, and concluded that Richman's activities did not employ sophisticated means.

The district court also believed that even if the sophisticated means enhancement applied, it could weigh, on the same scale with the enhancement, information concerning defendant's background, character, and conduct. Earlier, the sentencing court had acknowledged Richman's dedication to the medical profession, charity, religion, and to his family, and it was persuaded that these

considerations tipped the scale towards denying the government's request to apply the sophisticated means enhancement.

It sentenced Richman to a two-year term of probation, including six months of home detention without electronic monitoring, required restitution of $84,000 to the IRS, ordered that he not possess firearms or dangerous weapons, and imposed a $100 special assessment. From this sentence, the United States appeals.

## DISCUSSION

As discussed in *Lewis,* No. 95–1681, we review *de novo* the district court's decision not to apply the "sophisticated means" enhancement pursuant to U.S.S.G. § 2T1.1(b)(2), and conclude that the scheme in which Richman was engaged used sophisticated means. We so hold because the scheme was more complex and demonstrated greater intricacy and planning than a routine tax-evasion case. Further, we believe that because the enhancement provision is an offense characteristic and not a specific offender characteristic, it is of no moment that Richman himself neither created nor devised the scheme so long as sophisticated means were used in carrying it out. For the reasons discussed in *Lewis,* we reverse and remand for resentencing.

On remand, the sophisticated means enhancement must be applied. Once the factual predicate for the enhancement is satisfied, its application is mandatory. *United States v. Jimenez,* 68 F.3d 49, 51–52 (2d Cir.1995) (enhancement for managerial role), *cert. denied sub nom. Guzman v. United States,* — U.S. —, 116 S.Ct. 1448, 134 L.Ed.2d 568 (1996); *see also United States v. Dunnigan,* 507 U.S. 87, 98, 113 S.Ct. 1111, 1118–19, 122 L.Ed.2d 445 (1993) (requiring enhancement for perjury when trial court properly determines such has occurred). The district court rightly acknowledged that the Guidelines do not "straitjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble." *United States v. Lara,* 905 F.2d 599, 604 (2d Cir.1990). But a sentencing court may only "disregard ... the Guidelines ... when it finds 'that there exists an aggrava-

ting or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.'" *Burns v. United States,* 501 U.S. 129, 133, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991) (quoting 18 U.S.C. § 3553(b)). Guidelines § 5H1.11 declares that charitable good works and employment-related contributions "are not ordinarily relevant" in deciding when to depart from the Guidelines. It follows that these factors cannot be relied upon to avoid the compulsory application of the sophisticated means enhancement.

## CONCLUSION

The sentence is vacated and the case remanded for resentencing.