UNITED STATES of America, Appellee,

v.

Douglas BROWN, Defendant–Appellant.

No. 269, Docket 96–1174.

United States Court of Appeals, Second Circuit.

Oct. 16, 1996.

Lewis J. Liman, Assistant United States Attorney, Southern District of New York (Mary Jo White, United States Attorney,

Alexandra Rebay, Assistant United States Attorney, Southern District of New York, of counsel), for appellee.

Herald Price Fahringer, New York, New York (Erica T. Dubno, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York, New York, of counsel), for defendant-appellant.

Before: MESKILL, WINTER, CABRANES, Circuit Judges.

PER CURIAM:

Defendant Douglas Brown appeals a sentence, consisting primarily of five months' imprisonment, imposed by the United States District Court for the Southern District of New York (Allen G. Schwartz, *Judge* ). Most of the issues presented in this appeal are disposed of in a summary order entered simultaneously herewith. We write to consider two issues: (1) whether the Supreme Court's recent decision in *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), alters this Circuit's long-standing rule that a judge's denial of a motion to depart from a sentence range prescribed by the United States Sentencing Guidelines (the "Guidelines") is not normally appealable, *see, e.g., United States v. Martin*, 78 F.3d 808, 814–15 (2d Cir.1996); and (2) whether the district court was unaware of its authority to depart downward, thus requiring a vacatur of the sentence and a remand for resentencing.

### BACKGROUND

The following statement of facts, drawn from the record on appeal, is not disputed. Brown is an agent for photographers, doing business as Artistic Photographic Services, Inc. In an indictment filed June 27, 1995, the Government charged Brown under 18 U.S.C. § 371 with conspiring with the employees and owners of Robert Abrams Associates, Inc. ("Abrams Associates"), an accounting firm in Manhattan, to defraud the United States and the Internal Revenue Service ("IRS") by evading the payment of Brown's personal and business income taxes

from 1985 until 1993. He was also charged with three counts of income tax evasion, in violation of 26 U.S.C. § 7201, for the years 1989, 1990, and 1991.

Beginning in 1985, Brown participated in a complex tax evasion scheme with Abrams Associates, in which Brown claimed numerous deductions on his personal and corporate tax returns based on checks he wrote to bogus business and charitable entities created by Abrams Associates.[1] To hide the nature of these deductions, the checks were written for small amounts and deposited in numerous phony accounts. Abrams Associates would then return the deposited funds to Brown, minus a 10% cut, either by direct payments or by paying Brown's personal expenses, such as his membership in a beach club. Brown also wrote checks directly to Abrams Associates, claiming these payments as business deductions for professional fees, while in fact Abrams Associates retained only half of these payments as accounting fees and returned the remainder to Brown. Brown failed to report the return of the funds from Abrams Associates as income on his tax returns.

Between 1985 and 1991, Brown submitted 74 "deduction" checks to fifteen fictitious entities totaling $237,813 and 66 "deduction" checks to Abrams Associates totaling $131,-000. He signed and filed corporate and personal tax returns between 1985 and 1991 containing over $90,000 in fraudulent deductions, failed to report over $40,000 in personal income on these returns, and understated his capital gains by over $200,000 on a single, large investment.

The Government began investigating Abrams Associates, its owners and its clients in 1992. As a result of those investigations, Brown and over twenty other Abrams Associates' clients have pleaded guilty to offenses relating to tax evasion. Brown pleaded guilty to all four counts of the indictment against him on November 15, 1995.

Prior to sentencing, Brown submitted a lengthy memorandum in which he argued, *inter alia,* for a downward departure from the sentencing range prescribed by the Guidelines based on "extraordinary family

---

1. For a more detailed discussion of the intricacies of Abrams Associates' method for assisting clients in tax evasion, *see United States v. Lewis,* 93 F.3d 1075 (2d Cir.1996); *United States v. Richman,* 93 F.3d 1085 (2d Cir.1996).

circumstances." [2] He claimed that his wife, a chronic alcoholic, needs him to ensure that every morning she takes medication that causes nausea if alcohol is consumed. Brown argued that, because he is the only person who can ensure that she takes the required medication, she will relapse into alcoholism and place herself and their two teenage daughters in jeopardy if he is incarcerated.

In expressing his sympathy for Brown's request for a downward departure based on extraordinary family circumstances, Judge Schwartz remarked:

> I must tell you the temptation to [depart downward] is strong. I also tell you that if it were not for the guidelines, which I believe are the law of the land and I am required to follow them in this case as I am in other cases where I sometimes disagree strongly with the guidelines, I would do something different.

Nonetheless, the judge declined to exercise his discretion to depart downwards, finding that Browns' family circumstances, while deserving sympathetic consideration, were not sufficiently "extraordinary or unique" to "justify ... a downward departure."

On March 6, 1996, Judge Schwartz sentenced Brown to five months' imprisonment, five months' home detention, two years of supervised release, $12,709 in restitution, 100 hours of community service, and special assessments totaling $200. Brown filed a notice of appeal on March 12, 1996, and on April 13, 1996, the district court granted Brown's motion for bail pending appeal and stayed the execution of his sentence.

## DISCUSSION

### A.

■ While we review the district court's interpretation and application of the Guidelines *de novo* "giving due deference to the sentencing court," *United States v. Lewis*, 93 F.3d 1075, 1079 (2d Cir.1996); *United States v. Palmer*, 68 F.3d 52, 54 (2d Cir.1995), it is well established in this Circuit that a court's decision not to depart from the Guidelines is not normally appealable, *see Martin*, 78 F.3d at 814–815 (declining to "engraft" abuse of discretion standard onto "well settled principle barring review" of judge's decision not to depart downwards).

On appeal, however, Brown urges that the Supreme Court's recent decision in *Koon*, —— U.S. at ——, 116 S.Ct. at 2035, requires that we apply an "abuse of discretion standard" to a judge's decision not to depart from a prescribed Guidelines range. The *Koon* case, however, concerned the appropriate standard for reviewing a judge's decision to depart. *Id.* at ——, ——, 116 S.Ct. at 2043, 2046 (the Court "granted certiorari to determine the standard of review governing appeals from a district court's decision to depart from the sentencing ranges in the Guidelines"). Because *Koon* did not involve a judge's decision *not* to depart, it does not affect the law of this Circuit barring appeal where a district court decides not to depart. As we observed during the infancy of the Guidelines:

> Congress's failure to provide appellate review of sentences within the Guidelines correctly calculated [sentencing range] was ... a conscious decision consistent with its overall purpose. The very nature of the sentencing reform enterprise was to establish national standards narrowing the discretion of sentencing judges so as to attain a degree of uniformity.... Sentences within the Guidelines [sentencing range] may be deemed to be reasonable and within the exclusive discretion of the sentencing court solely because of the Commission's blessing of the permissible range.

*United States v. Colon*, 884 F.2d 1550, 1555 (2d Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). These principles were in no way affected by the Court's decision in *Koon*. A sentencing judge's decision to depart remains appealable only where "the guidelines were misapplied, the court misapprehended its authority or imposed an illegal sentence." *United States v. Haynes*, 985 F.2d 65, 68 (2d Cir.1993) (citing *United States v. Sharpsteen*, 913 F.2d 59, 62–63 (2d

---

**2.** In support of his argument, the defendant relies upon our cases upholding departures from the otherwise applicable range for "extraordinary family circumstances." *See, e.g., United*

States v. Johnson, 964 F.2d 124, 128–30 (2d Cir.1992) (departure not an abuse of discretion where defendant was solely responsible for bringing up four young children).

Cir.1990)); *see also United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994) (citing cases).

### B.

■ Brown also claims that the record is unclear as to whether the district court recognized its power to depart for extraordinary family circumstances. He argues that comments made by Judge Schwartz—to the effect that he "would do something different" but for the Sentencing Guidelines—suggest that the judge may not have understood his authority to depart on this ground.

■ It bears recalling that federal sentencing judges have discretion to depart from the prescribed Guidelines range in only three situations. First, a judge may depart if the prosecution makes a motion for a downward departure on the basis of the defendant's substantial assistance to the authorities. U.S.S.G. § 5K1.1. Second, a court may depart if it finds that there is an "aggravating or mitigating circumstance" that the Commission did "not adequately take into consideration ... in formulating" the Guidelines. 18 U.S.C. § 3553(b). The Commission has referred to such cases as outside the "heartland" or "ordinary" case. *See* U.S.S.G. § 5K2.0 (when determining if a sentence should be outside the Guidelines range, a judge may consider offender characteristics or other circumstances, not ordinarily relevant, where they are present in such a manner as to distinguish the case from the "'heartland' cases covered by the guidelines"); *id.* § 1A.4(b) ("When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."). Third, a sentencing judge may depart where the Guidelines expressly authorize departure. *See, e.g., id.* § 4A1.3 (judge may depart if criminal history score calculated under Guidelines "does not adequately

reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes").

■ When a sentencing judge asserts that he has no authority to depart, or when he says he wishes he could impose a sentence outside the calculated Guidelines range but is constrained by the Guidelines from doing so, we do not infer that he is saying that the Guidelines never permit departure (for that is obviously untrue) but *that the facts of the case at hand do not provide any basis for lawful departure.* There may be no basis for departure if (a) no aspect of the defendant's criminal behavior or personal history warrants a different sentence, (b) consideration of any such aspect is expressly proscribed by the Guidelines[3] or case law[4] as a basis for departure, *or* (c) even though not barred by the Guidelines or case law as a basis for departure, the factors relating to a defendant's behavior or personal history[5] do not sufficiently distinguish the case at hand from the "ordinary" or "heartland" case covered by the Guidelines.

■ Accordingly, we cannot agree with the defendant's interpretation of Judge Schwartz's comments. Nothing is more common at a sentencing hearing in the age of the Sentencing Guidelines than a judge's statement that he is imposing a sentence within a particular range because that is the range prescribed by law—that is, a sentence in the range required by the application of the Guidelines. As any informed person is aware, the Guidelines have divested district judges of much, though not all, of the sentencing discretion that they once exercised. Accordingly, we should not be surprised when, on occasion, a district judge refers in

---

**3.** *See, e.g.,* U.S.S.G. § 5H1.12 (providing that defendant's disadvantaged background is not relevant when considering departure from applicable sentencing range).

**4.** *See, e.g., Koon,* —— U.S. at ——–——, 116 S.Ct. at 2052–53 (court may never depart downwards on ground that defendant is even less likely to be recidivist than a typical defendant in Guidelines Criminal History Category I).

**5.** *See, e.g.,* U.S.S.G. § 5H1.5 (providing that defendant's employment record is not ordinarily relevant when considering departure from applicable sentencing range); *Id.* § 5H1.11 (providing that defendant's military, civic, charitable, public service, or similar good works are not ordinarily relevant when considering departure from applicable sentencing range).

the course of a sentencing hearing to the fact that the prescribed sentence range requires him to impose a sentence different from one he would impose in the absence of the Guidelines. We will not find, on the basis of such comments—or on the basis of expressions of frustration with a sentence range prescribed by the Guidelines, such as "my hands are tied by the Guidelines" or "if it were up to me . . ." or "if it were not for the Guidelines, I would . . ." or some such comment—that a district judge is unaware of the scope of his authority under the regnant sentencing system. We apply a presumption that district judges understand the much-discussed processes by which they may, in circumstances permitted by law, exercise discretion to depart from the sentence range prescribed by the Guidelines calculus. *United States v. Sweeney*, 90 F.3d 55, 58 (2d Cir.1996) (noting that "we have generally accorded sentencing judges a presumption of awareness of sentencing options"). We do not require that district judges by robotic incantations state "for the record" or otherwise that they are aware of this or that arguable authority to depart but that they have consciously elected not to exercise it. *Cf. United States v. Margiotti*, 85 F.3d 100, 103 (2d Cir.1996) (per curiam) ("Sentencing is rigid and mechanistic enough as it is without the creation of rules that treat judges as automatons."), *cert. denied*, — U.S. —, 117 S.Ct. 324, — L.Ed.2d — (1996). Any arguable suggestion to the contrary in the early years of the Sentencing Guidelines, *see, e.g., United States v. Ritchey*, 949 F.2d 61, 63 (2d Cir. 1991) (per curiam), has yielded to the strong presumption that a district judge is aware of the assertedly relevant grounds for departure, *see United States v. Chabot*, 70 F.3d 259, 261 (2d Cir.1995) (per curiam); *Ekhator*, 17 F.3d at 55. This presumption is overcome only in the rare situation where the record provides a reviewing court with clear evi-

dence of a substantial risk that the judge misapprehended the scope of his departure authority.[6]

### CONCLUSION

(1) Brown's challenge to the sentencing judge's decision not to depart from the applicable Guidelines sentencing range is not appealable, notwithstanding the Supreme Court's recent decision in *Koon*, — U.S. at —, 116 S.Ct. at 2035; and

(2) A review of the record persuades us that Judge Schwartz's statement, that the Guidelines prevented him from sentencing Brown in the way he thought was just, does not overcome the presumption we have described. There is simply no contradiction between Judge Schwartz's complaint that the Guidelines prevented him from doing what he thought was right and his denial of a departure because he did not believe that Brown's family circumstances were "extraordinary."

The judgment of the district court is affirmed.

---

6. *Ekhator*, 17 F.3d at 55–56, is not to the contrary. In *Ekhator*, we remanded for resentencing where the sentencing judge's comments, when denying the defendant's request for a downward departure, were "at best ambiguous," and the basis of that departure—"extraordinary family circumstances"—had only just been ap-

proved by this Court at the time of sentencing. In that exceptional case there was a legitimate question as to whether the sentencing judge was aware of the change in the law of the Circuit. The instant case, in contrast, involves long established interpretations of the Guidelines.