*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0103P (6th Cir.)
File Name: 00a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　　*v.*

BRETT L. HENDERSON
(98-4087), DAVID NELMS
(98-4369),
　　　　　*Defendants-Appellants.*

Nos. 98-4087/4369

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 97-00098—George C. Smith, District Judge.

Submitted: March 8, 2000

Decided and Filed: March 23, 2000

Before: WELLFORD, SILER, and GILMAN, Circuit
Judges.

———————————

**COUNSEL**

**ON BRIEF:** Brian E. Goldberg, DANA & PARISER,
Columbus, Ohio, William K. Fulmer, II, Erlanger, Kentucky,

1

for Appellants.   Robyn R. Jones, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.  Brett Henderson and David Nelms pled guilty to conspiring to import cocaine in violation of 21 U.S.C. § 963.  Both are appealing their sentences, claiming that their criminal history categories overstate the seriousness of their past conduct.  Because of this, they argue that the district court erred when it denied their motions for a downward departure from the United States Sentencing Guidelines.  Henderson also argues that the district court erred when it assessed him with three criminal history points, pursuant to U.S.S.G. § 4A1.1(a), for serving a sentence in excess of one year and one month for a past robbery conviction.  The district court rejected Henderson's and Nelms's arguments and found that their criminal history categories adequately reflected their numerous past convictions.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

In the summer of 1996, two brothers, Mark and Gary Seawell, developed an organization to import cocaine from Belize and Mexico into Columbus, Ohio for distribution.  From the summer of 1996 through the summer of 1997, the Seawells hired other individuals, including Brett Henderson, to recruit couriers for them.  A courier would travel to Chetamul, Mexico and receive a pair of tennis shoes with a half kilogram of cocaine concealed in the sole of each shoe.  Upon receiving the shoes, a courier would place them on his feet and wear them back to Columbus.  Henderson and the other recruiters would pick up the cocaine from their respective couriers and deliver it to Gary Seawell for distribution.

category that Henderson received with nine points. Thus, even if Henderson's argument had merit, the applicable guideline sentencing range would have remained the same.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

Nelms was involved in a cocaine shipment for the Seawells in August of 1997. Instead of having couriers bring the drugs back in their tennis shoes, this particular shipment was sent by mail from Belize to Columbus. The United States Customs Service, however, intercepted this shipment and made a controlled delivery to one of Nelms's co-conspirators. Gary Seawell then instructed this co-conspirator to give the cocaine to another co-conspirator named Richard Meighan. When Meighan arrived to pick up the package of cocaine, Nelms was with him. Upon being approached by the police, Nelms fled. Nelms was ultimately arrested. The box in which the cocaine had been shipped was recovered from the location where Nelms had attempted to hide it during the chase. Subsequent investigation further revealed that Nelms had distributed cocaine for the Seawells in the past and was expecting to receive a portion of the cocaine delivered in the August shipment.

Shortly thereafter, Henderson and Nelms were indicted on numerous drug charges. On December 24, 1997, pursuant to separate plea agreements, they each pled guilty to conspiring to import cocaine in violation of 21 U.S.C. § 963. Prior to sentencing, the government filed motions, pursuant to U.S.S.G. 5K1.1, seeking downward departures for both Henderson and Nelms based on their assistance in the investigation of their co-conspirators. Because Henderson had provided more assistance than Nelms, the government recommended that the district court depart four offense levels for Henderson and three offense levels for Nelms. The district court granted the government's motion and departed accordingly.

In determining Henderson's sentence, the district court pointed out that he had twelve convictions as an adult. All of them were not included in Henderson's criminal history computation due to the length of time that had passed since some of them had occurred. Those that were utilized for purposes of the computation included a conviction for operating a motor vehicle while under the influence (OMVI) in 1987, a robbery conviction in 1990, OMVI convictions in

1993 and 1995, a conviction for driving under a suspended license in 1995, disorderly conduct convictions in 1996 and 1997, and a negligent assault conviction in 1997. Henderson received a total of nine criminal history points that resulted in a criminal history category of IV for purposes of sentencing. These nine points were derived by assessing Henderson three criminal history points for the 1990 robbery conviction, *see* U.S.S.G. § 4A1.1(a), four points for the other numerous convictions that he had, *see* U.S.S.G. § 4A1.1(c), and two points for committing the instant offense while on probation, *see* U.S.S.G. § 4A1.1(d).

Henderson made several objections to his criminal history calculation. One of his primary contentions was that his criminal history category overstates the seriousness of his past conduct. In other words, because his past criminal history consists of a number of "minor" violations, Henderson argued that his criminal history category exaggerates the significance of his past conduct. His other main argument was that he should not receive the three point assessment for his 1990 robbery conviction because of his unsupported contention that he was supposed to get "shock probation" after he had served only six months in prison. Shock probation is a term of art for early release that may be granted in the discretion of the Ohio trial court. *See Ohio v. Bistarkey*, No. 90-CR-290, 1994 WL 456473, *2 (Ohio Ct. App. Aug. 19, 1994); O.R.C. § 2947.061. Because defendants are able to get out of prison much sooner than under normal conditions, many state defendants file motions for shock probation in Ohio.

The district court, however, concluded that Henderson's criminal history category was not overstated and pointed out that the plain language of § 4A1.1 mandated that the court add three points for the robbery conviction. It then departed downward four offense levels because of Henderson's assistance to the government, which was a 70-month reduction, and sentenced Henderson to 140 months of imprisonment, followed by a 5-year period of supervised release, and a $100 special assessment. Henderson timely filed a notice of appeal.

Now, according to 4A1.1(a), three points are added for each prior sentence of imprisonment exceeding one year and one month. On May 30th of 1990, the defendant was sentenced to 3-15 years of imprisonment for robbery. On November 27th of 1991, the defendant received shock probation. This term of imprisonment clearly fulfills the criteria for a three-point enhancement under 4A1.1(a). Therefore, the Court finds that the defendant is deserving of the three criminal history points pursuant to that section.

As pointed out by the district court, three points are added for each prior sentence of imprisonment exceeding one year and one month. *See* U.S.S.G. § 4A1.1(a). Henderson admits that he served a sentence of one year and approximately six months for his 1990 robbery conviction. Consequently, § 4A1.1(a) is clearly applicable.

Henderson, however, attempts to avoid the application of § 4A1.1(a) by arguing that his sentence on the robbery conviction would have been less than one year and one month had his defense lawyer in 1990 filed for "shock probation" in a more timely fashion. This argument, however, is unavailing because this circuit has held that "the federal sentencing forum [is] not the proper forum for a constitutional challenge to a prior conviction used to enhance a sentence." *Turner v. United States*, 183 F.3d 474 (6th Cir. 1999) (citing *Custis v. United States*, 511 U.S. 485 (1994)).

Finally, even if the district court had accepted Henderson's argument and found that he should have served only six months for his robbery conviction instead of a year and six months, such a finding would not have changed his overall criminal history category. Under § 4A1.1(b), two points would have been assessed for the 1990 robbery conviction because Henderson's sentence would have exceeded sixty days. If two points are used instead of three, then Henderson's total criminal history points would have been eight instead of nine. Eight criminal history points, however, still result in a criminal history category of IV, the same

convictions. The Court finds that these convictions do not produce a criminal history category which significantly over represents the defendant's criminal history and are an accurate prediction of the defendant's likelihood to commit further crimes. So, therefore, no downward departure is warranted.

In addressing a similar argument from Nelms, the district court further acknowledged its authority to depart downward:

[I]f reliable information indicates that the defendant's criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the Court may consider imposing a sentence and departing from the otherwise applicable guideline range. The example might be two misdemeanors close to a 10-year prior instant offense. . . . The Court finds that a departure in this case is unwarranted and due to the constant violations and convictions that the defendant has had, that the departure is not applicable under 4A1.3 or any other paragraph of that report.

Because the district court was clearly aware of its discretion to depart downward in both Henderson's and Nelms's cases, its informed decision not to depart is unreviewable. *See United States v. Brown*, 66 F.3d 124, 128 (6th Cir. 1995) ("[A] lower court's informed decision not to depart from a valid guideline range is not reviewable.").

**C.  The district court properly assessed three criminal history points for the sentence that Henderson received relating to his robbery conviction**

Henderson also argues that he should not have been assessed three criminal history points for serving over one year and one month in prison for his robbery conviction. *See* U.S.S.G. § 4A1.1(a). In addressing that argument, the district court concluded as follows:

With respect to Nelms's sentence, his record includes juvenile convictions for receiving stolen property and attempted drug abuse, neither of which were used in calculating his criminal history. As an adult, Nelms has a conviction for aggravated trafficking in drugs in 1991, four drug convictions between the span of 1992 to 1993, and a drug abuse conviction in 1995. Nelms's six drug convictions resulted in a criminal history score of thirteen under the guidelines. He is also a "career offender" because, as an adult, he had been convicted of two felony drug crimes prior to his felony plea on the cocaine importation charge. *See* U.S.S.G. 4B1.1. A total criminal history score of thirteen combined with his career offender status resulted in a criminal history category of VI.

At Nelms's sentencing hearing, he argued that the offenses that made him a career offender were committed when he was eighteen and nineteen years old and involved only a small amount of drugs. Thus, according to Nelms, his "prior history [did] not accurately reflect the gravity of the career offender status." The district court, however, found that Nelms's criminal history category adequately reflected his past conduct, especially considering the amount of violations that he had committed. On the other hand, it did depart downward three levels on account of Nelms's assistance to the government. This departure resulted in a thirteen month reduction from the low end of Nelms's original guideline range and a sixty month reduction from the maximum possible sentence that he could have received. After the departure, Nelms's offense level was twenty-eight and his criminal history category was VI, which resulted in a sentencing range of 140 to 175 months. Nelms was sentenced to 175 months of imprisonment, followed by a 4-year period of supervised release, and a $100 special assessment. Because Nelms ran from the arresting officers, attempted to conceal evidence, and had a lengthy criminal history, he was sentenced at the high end of the guideline range. Nelms filed a timely notice of appeal.

## II. ANALYSIS

### A.  Standard of review

Both Henderson and Nelms argue that the district court abused its discretion when it denied their motions for a downward departure.  The government counters by arguing that the district court did not abuse its discretion because it was aware that it had the authority to depart downward.  All of the parties cite *Koon v. United States*, 518 U.S. 81 (1996), for the proposition that we review a district court's decision not to depart for an abuse of discretion.  *Koon*, however, dealt with a district court's affirmative decision *to depart* downward, which is inapplicable to a district court's decision *not* to depart from the sentencing guidelines.  *See United States v. Brown*, 98 F.3d 690 (2d Cir. 1996).

In *Brown*, the Second Circuit addressed *Koon*'s applicability to a decision not to depart from the sentencing guidelines and held the following:

[I]t is well established in this Circuit that a court's decision not to depart from the Guidelines is not normally appealable.  On appeal, however, Brown urges that the Supreme Court's recent decision in *Koon* . . . requires that we apply an "abuse of discretion standard" to a judge's decision not to depart from a prescribed Guidelines range.  The *Koon* case, however, concerned the appropriate standard for reviewing a judge's decision to depart.  Because *Koon* did not involve a judge's decision not to depart, it does not affect the law of this Circuit barring appeal where a district court decides not to depart.

*Id*. at 692 (citations and parentheticals omitted).

We agree with the Second Circuit's reasoning in *Brown* and find that *Koon* does not alter this court's precedent that generally precludes appeals from decisions not to depart from the guideline range.  *See United States v. Rudolph*, 190 F.3d 720, 722 (6th Cir. 1999) (holding, in a post-*Koon* case, that

"[u]nless a district court mistakenly believes that it lacks the legal authority to depart below the guidelines range, this court may not review a district court's decision not to depart."); *United States v. Pruitt*, 156 F.3d 638, 650 (6th Cir. 1998) ("A district court's discretionary refusal to depart downward is generally not appealable, unless the district court mistakenly believed it did not have legal authority to depart downward.").  Consequently, the primary issue in the case before us is whether the district court believed that it had the legal authority to depart downward if it were to find that Henderson's and Nelms's criminal history categories overstated the seriousness of their past conduct.

Henderson also argues that the district court erred when it assessed him with three criminal history points for his 1990 robbery conviction.  With respect to sentencing determinations, we review a district court's factual findings under the "clearly erroneous" standard, and review its legal conclusions under the de novo standard.  *See United States v. Waldon*, __ F.3d __, 2000 WL 178107, at * 9 (6th Cir. Feb. 17, 2000).

### B.  The district court made an informed decision not to depart downward in both Henderson's and Nelms's cases, making those decisions unreviewable

At Henderson's sentencing hearing, the district court commented as follows regarding Henderson's argument that his criminal history category was overstated:

Regarding the criminal history being overstated and asking for a downward departure under 4A1.3, as you have argued here and in your paperwork, in that it consists of minor violations.  Section 4A1.3 states that if the defendant's criminal history category significantly over represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit future crimes, a downward departure may be appropriate.  In the instant case, the defendant between 1986 and 1997 had 12 convictions, some of which were of a violent nature.  They also included three OMVI