**UNITED STATES of America,**
**Appellee,**

v.

**Russell T. AMSDEN, also known as Hymo, Defendant–Appellant.**

No. 03–1072.

United States Court of Appeals,
Second Circuit.

Oct. 22, 2003.

Anthony M. Bruce, Assistant United States Attorney, (Michael A. Battle, United States Attorney for the Western District of New York, on the brief), Buffalo, NY, for Appellee, of counsel.

Thomas Theophilos, Buffalo, NY, for Defendant–Appellant.

PRESENT: NEWMAN, SOTOMAYOR, and WESLEY, Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Russell Amsden ("Amsden") appeals from a judgment of the United States District Court for the Western District of New York (Skretny, J.) applying a sentencing enhancement pursuant to § 2E2.1(b)(1)(C) of the United States Sentencing Guidelines ("Guidelines") for brandishing a "dangerous weapon," rejecting his motion for a downward departure based on poor health under §§ 5K2.0 and 5H1.4 of the Guidelines, and sentencing him to 51 months' imprison-

ment for the crime of knowingly participating in the use of extortionate means to collect a debt under 18 U.S.C. § 894(a)(1). For the reasons that follow, we affirm the district court's judgment in part and dismiss the portion of Amsden's appeal concerning his departure motion.

Amsden's underlying conviction stemmed from a December 18, 1998 incident in which he threatened David Franco ("Franco") with violence to collect on a gambling debt. Franco was a paid FBI informant who had previously met with Amsden a number of times, and, on this occasion, was wearing a transmitter that allowed FBI agents to hear and record the encounter. On the recording, which was played at Amsden's sentencing hearing, Amsden repeatedly threatened Franco with remarks clearly indicating that he was brandishing a knife or some other bladed instrument. (*See* Gov. Ex. A from May 28, 2002 Sentencing Hr'g at 6, 7–8, 18.)

Franco testified at Amsden's sentencing hearing that Amsden's threats referred to a knife with a 2–3 inch blade, measuring approximately five inches with the blade fully extended. (Tr. of May 28, 2002 Sentencing Hr'g at 16.) Franco also testified that at one point in the conversation—at which the recording transcript reflects that Franco said "Ooow"—Amsden jabbed him in the chest with the knife's extended blade. (*See id;* Gov. Ex. A from May 28, 2002 Sentencing Hr'g at 7.) There was conflicting testimony, however, concerning how many wounds Franco received, their severity, and the manner in which Franco showed the wounds to the FBI agents. (Tr. of Jan 27, 2003 Sentencing Hr'g at 22.)

Amsden first argues that the district court violated his due process rights by relying on its own examination of his alleged knife—which was never introduced into evidence—in determining whether it was a "dangerous weapon" for purposes of the brandishing enhancement. The Guidelines define the term "dangerous weapon" as

(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (*e.g.* a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S. SENTENCING GUIDELINES MANUAL § 1B1.1, cmt. n. 1(d) (2002). We find it unnecessary to address the merits of Amsden's due process claim, as any error by the district court was harmless. Regardless of whether the district court impermissibly examined the knife, the undisputed evidence in the record and the district court's findings based on that evidence establish that the knife Amsden brandished was a "dangerous weapon" within the Guidelines' definition.

Amsden admitted at the sentencing hearing that he possessed a "pen" or "souvenir" knife during the commission of his offense. (*See* Tr. of Jan. 27, 2003 Sentencing Hr'g at 23, 27, 36.) Moreover, in specifically ruling that Amsden not only possessed the knife but brandished it, the district court found that Amsden's repeated stabbing threats during the recorded December 18, 1998 encounter referred to the knife in his possession. *Id.* at 23. The district court made additional findings that Amsden "certainly made [the knife's] possession known in an attempt to intimidate Franco," and that Franco's spontaneous "Ooow" during the recorded conversation was consistent with Amsden either poking or stabbing him with the knife. *Id.* at 24.

None of these findings were dependent on the district court's alleged examination of the knife.[1] They nevertheless compel the conclusion that Amsden used the knife "in a manner that created the impression that the [knife] was [a dangerous] instrument." U.S. SENTENCING GUIDELINES MANUAL § 1B1.1, cmt. n. 1(d)(ii)(II) (2002). Even if we were to accept Amsden's unlikely contention that the knife was so blunt or flimsy that it was incapable of inflicting "serious bodily injury" under Application Note 1(d)(i) to § 1B1.1 (Appellant's Br. at 23.), Amsden's statements and the district court's findings bring his actions within the ambit of Application Note 1(d)(ii)(II). Thus, any error resulting from the district court's statements that it had viewed Amsden's knife in determining that the knife was "dangerous" was harmless, and we affirm the district court's application of the brandishing enhancement.

■ Amsden next argues that we should reverse the district court's refusal to grant his downward departure motion because the district court impermissibly considered the knife when deciding whether Amsden was entitled to a health-based downward departure. The argument relies on an untenable interpretation of the district judge's concluding statement in his January 27, 2003 ruling. (See Tr. of Jan. 27, 2003 Sentencing Hr'g at 24–25.) Despite the close proximity of references to the brandishing ruling and the downward departure ruling in the statement, there is simply no basis for Amsden's claim that the examination of the knife factored into the district court's denial of his downward departure motion. The district judge, in

fact, already had rejected Amsden's downward departure motion before even addressing any issues relating to the knife or making mention of it. See id. at 9–17. We therefore find this argument wholly without merit.

■ Amsden's third argument is that the district court refused to grant his downward departure motion because it misapprehended its authority to downwardly depart. Amsden must make this argument because a district court's refusal to grant a discretionary downward departure is normally not reviewable, except when it appears that a sentencing judge mistakenly believed that he or she lacked the authority to depart. See United States v. Bala, 236 F.3d 87, 91 (2d Cir.2000). We, however, generally presume that the district court understood the extent of its sentencing authority, in the absence of evidence to the contrary, and specifically "do not require that district judges by robotic incantation state 'for the record' or otherwise that they are aware of this or that arguable authority to depart but that they have consciously elected not to exercise it." United States v. Brown, 98 F.3d 690, 694 (2d Cir.1996) (emphasis added); see also United States v. Silleg, 311 F.3d 557, 561 (2d Cir.2002).

In declining to grant Amsden's health-based departure motion, the district court clearly recognized and repeatedly acknowledged its departure authority. The court explained, for example, that physical impairments are not normally a basis for departure, but that it nevertheless had the discretion to depart if it believed Amsden's case presented exceptional circumstances

---

1. We also reject Amsden's argument that the factual findings the district court made in imposing the brandishing enhancement were clearly erroneous because they relied on "contradictory and self serving" statements by the government's witnesses. (Appellant's Br. at 25.) The district court's findings were supported by ample evidence, and it specifically noted that its ruling was not dependant on those aspects of the government witnesses' testimony that contained discrepancies. (Tr. of Jan. 27, 2003 Sentencing Hr'g at 22–23.)

under *Koon v. United States,* 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). (Tr. of Jan. 27, 2003 Sentencing Hr'g at 11.) After discussing the medical evidence and rejecting Amsden's claim that prison officials would be unable to provide him adequate care based on his past treatment while incarcerated, the district court concluded that "although [Amsden's] medical conditions are clearly serious, I find that they do not rise to [an] extraordinary level, such that they fall outside the heartland of cases or are distinguishable from other cases involving serious medical conditions." *Id.* at 16. This sufficiently evidences that the district court apprehended its discretion to downwardly depart, and we therefore have no basis to review its decision not to exercise that discretion.

▮ In his brief on appeal, Amsden argues that he was also entitled to a downward departure based on the government's entrapment-like use of Franco and prosecutorial delay that deprived him of the opportunity to serve his sentence for this offense concurrently with his prior sentence for a narcotics conviction. At oral argument before this Court, however, Amsden's counsel conceded that these arguments were not raised as independent grounds for downward departure before the district court.[2] We need not consider them separately when they were raised for the first time on appeal. *Cf. United States v. Quintieri,* 306 F.3d 1217, 1229 (2d Cir. 2002) (noting, where defendant argued new ground for departure at re-sentencing, defendant ordinarily waives issues by not litigating them at the time of his or her initial sentencing). We therefore grant the government's motion to dismiss in its entirety the portion of Amsden's appeal concerning the district court's departure authority.

▮ Finally, Amsden argues that his present conviction and a prior narcotics conviction for which he already had served a prison sentence should have been "grouped" pursuant to Chapter 3, Part D of the Guidelines, and that his sentences therefore should have run concurrently. Nothing in Chapter 3 suggests that the Part D grouping rules, which normally apply when a defendant has been convicted of multiple counts in a single indictment, require courts to fashion concurrent sentences in instances where, as here, a defendant has been convicted separately for two distinct crimes. Furthermore, Amsden was sentenced on his narcotics conviction only after he already had served his sentence for the extortion conviction, making "grouping" of the sentences particularly inappropriate. *See United States v. Labeille–Soto,* 163 F.3d 93, 98–99 (2d Cir. 1998) (finding statutes and guidelines permitting concurrent sentencing for prior *undischarged* terms of imprisonment not intended to allow a court to fashion a prison term to run concurrently with a *discharged* prior sentence). We thus affirm the district court's imposition of a non-"grouped" term of imprisonment.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED in part, and the appeal is in remaining part DISMISSED.

---

**2.** Presumably, Amsden did not raise them separately because he was required "not to move for, request, recommend or suggest any ... downward adjustments or departures other than those specifically set forth" by his plea agreement. (Nov. 26, 2001 Plea Agreement at ¶ 9.)