UNITED STATES of America
Plaintiff–Appellee,

v.

Natividad CARDENAS–VELEZ
Defendant–Appellant.

No. 02–5543.

United States Court of Appeals,
Sixth Circuit.

Feb. 11, 2004.

Thomas L. Parker, Asst. U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Mary C. Jermann, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

KRUPANSKY, Circuit Judge.

Defendant–Appellant Natividad Cardenas–Velez ("Cardenas–Velez") pleaded guilty to a charge of possession with intent to distribute methamphetamine and has now challenged the district court's sentencing determination. Cardenas–Velez has specifically charged that the district court erred in three instances: when it relied upon an uncertified record of defendant's criminal history; when it denied him a reduction, pursuant to U.S.S.G. § 3B1.2, in his base offense level for being a minimal or minor participant; and, when it sentenced defendant separately from his indicted co-conspirator. For the reasons considered below, this Court affirms the determination of the district court.

On March 30, 2001 a confidential informant working with the Memphis Police Department contacted an individual by telephone, later identified as Cardenas–Velez, initiating negotiations for the purchase of a large amount of methamphet-amine. The informant had purchased methamphetamine from Cardenas–Velez on several occasions. On April 16, 2001, appellant and the informant met first to view and decide upon the type of methamphetamine. Later that same day the two met again and the informant purchased three ounces of methamphetamine. Ten days later the informant met with appellant and purchased two ounces of methamphetamine.

In the course of those transactions, the informant told Cardenas–Velez of a Nashville buyer who sought to purchase larger, pound quantities, of methamphetamine. On May 17, 2001 the appellant agreed to sell two pounds of methamphetamine to the informant for $12,000, but delayed the sale because the storage unit containing the drugs was closed. Cardenas–Velez later agreed to meet on May 22, 2001 in a parking lot to exchange three pounds of methamphetamine for $30,000. That evening, an undercover officer posing as the Nashville buyer met with Cardenas–Velez in the back seat of an automobile driven by Roberto Vega. The appellant opened a brown bag containing three vacuum-sealed containers of methamphetamine, whereupon Memphis police officers arrested appellant and Vega.

The officers found nearly $3,000 in cash on the suspects and, on Roberto Vega, officers found an access card for a storage unit. Officers obtained a search warrant for the storage unit which they unlocked using Vega's access card. The search yielded a vacuum-sealed bag containing $49,900 in cash, five vacuum-sealed plastic bags containing 4,221 grams of methamphetamine along with a handgun and a dental bill for services performed on Roberto Vega. The rental agreement for the storage unit listed Santiago Rico as the lessee.

On June 6, 2001, appellant-defendant Cardenas–Velez and his indicted co-conspirator. Roberto Vega, pled guilty to the second count of a two-count indictment, charging the pair with possession with intent to distribute approximately 11 pounds of methamphetamine, in violation of 21 U.S.C. § 841. In exchange the government dismissed count one of the indictment charging conspiracy to possess with intent to distribute the controlled substance in violation of 21 U.S.C. § 846. As a result of the shortage of available district judges in the Western District of Tennessee each defendant was assigned a separate judge for sentencing. On March 8, 2002, Judge O'Meara sentenced Roberto Vega to 120 months. On April 1, 2002, Judge Gibbons sentenced appellant Cardenas–Velez to 115 months. Defendant filed a timely notice of appeal on April 23, 2002.

At the defendant's sentencing hearing the government counsel apprised Judge Gibbons of the disposition of Judge O'Meara's sentencing of Roberto Vega. The record evidence indicated that prior to imposing the 120–month sentence, Judge O'Meara had found the recommended two-level weapons enhancement inapplicable to Vega and, further, had considered Vega a minor participant in the undertaking. Judge Gibbons did not agree with the dismissal of the weapons enhancement but, nevertheless, noted:

> I don't think that defendants should be facing conflicting findings by judicial officers with respect to a firearm enhancement, although it does seem like that Mr. Cardenas–Velez has a better argument for not receiving the enhancement that Mr. Vega would have had.

Judge Gibbons took issue with Judge O'Meara's determination to attribute the amount of drugs in the storage unit to Vega, but not the gun, which was also located in the storage unit.

During appellant's sentencing hearing Judge Gibbons also heard testimony concerning the veracity of uncertified municipal court records relied upon to construct Cardenas–Velez's criminal history. Probation officer Judy Palmer testified that prior to completing the presentence report she had correspondence and conversations with the probation officer in the California municipal district where appellant had received a 30–day sentence for hit-and-run and property damage. The probation officer explained that because the specific judicial district in which Cardenas–Velez had been convicted had merged into the municipal court the official records consisted of no more than the computer print-outs received by Officer Palmer. The district court adopted the probation officer's position in the second addendum to the presentence report and determined that while the records were not certified, they were "in fact reliable to show what in fact happened."

The defendant received a total criminal history score of four as a result of the hit-and-run conviction, an outstanding probation violation of driving without a license, and simple marijuana possession. This placed Caredenas–Velez in a criminal history category of III which, when combined with the adjusted offense level of 38—for the quantity of methamphetamine and weapons enhancement—resulted in a guideline range of from 292 to 365 months. Appellant did not receive an enhancement for his negotiating role in the instant offense, nor did the district court view Cardenas–Velez as a "minor or minimal participant."

The record indicates that several factors resulted in Judge Gibbons' sentencing determination, reducing the recommended 292–365 months sentence to 115 months. As noted, the district court reluctantly removed the two-level weapons enhancement

for the sake of consistency with the sentencing of appellant's co-conspirator. Appellant also received a three-level reduction for acceptance of responsibility. In addition, government counsel recommended a § 5K1.1 departure in recognition of Cardenas–Velez's cooperation in preparing to testify against Vega.

Whether Cardenas–Velez had been previously convicted of the California hit-and-run offense is a question of fact reviewed for clear error. *United States v. Greene,* 71 F.3d 232, 235(6th Cir.1995); *United States v. Brawner,* 173 F.3d 966, 971 (6th Cir.1999).

■ Cardenas–Velez has urged this Court to find the district court in error for admitting into evidence uncertified copies of a computer record disclosing appellant's previous hit-and-run conviction. The defendant has further maintained that the district court erred when, as a result of this admission of evidence, the court denied Cardenas–Velez a "safety valve" reduction pursuant to U.S.S.G § 5C1.2.

The sentencing guidelines entitle the district court to rely upon uncorroborated hearsay testimony that bears sufficient indicia of reliability. Specifically, the Guidelines direct that:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a). *See also United States v. Greene,* 71 F.3d at 235 (noting that "this court has set a relatively low hurdle" for showing indicia of reliability); *United States v. Wiant* 314 F.3d 826, 832 (6th Cir.2003).

The record reflects that prior to the consideration of the disputed criminal history record the district court heard testimony from the probation officer responsible for locating Cardenas–Velez's records from California. While these records were not certified, the district court, nevertheless, found that the documents in question had sufficient indicia of reliability. The district court reached the proper conclusion.

The probation officer responsible for preparing Cardenas–Velez's presentence report. Judy Palmer, testified that she contacted the probation office in California by letter requesting a records check. Officer Palmer's testimony indicated that Cardenas–Velez appeared with counsel, and an interpreter, in the California hit-and-run conviction. Appellant was placed on summary probation for three years and received thirty days in jail and payment of restitution. Subsequent conversations with the California probation authority concerning appellant's hit-and-run conviction disclosed that the court in which the conviction was issued had merged with another court for which the computer records, relied upon by the district court in the instant case, were the only copies available from the new court. However, Officer Palmer also asserted that she could secure certified copies from the new court should it prove necessary. Officer Palmer further testified to a conversation with an authority at the local jail which also had a record of Cardenas–Velez serving a sentence for a hit-and-run conviction.

The defendant has further argued that he had not been incarcerated, but had

been consigned to washing police cruisers for fifteen days. In response, the court properly noted that whether Cardenas–Velez actually served the full sentence did not effect the tabulation of his criminal history as the "sentence governed, not the amount of time he actually served." Under U.S.S.G. § 4A1.2, "criminal history points are based on the sentence pronounced, not the length of time actually served." *Id.*, cmt. note 2. Consequently, appellant's properly calculated four criminal history points render his sentence ineligible for consideration of the "safety valve" provision under § 5C1.2(a)(1).

■ Defendant's entitlement to a downward adjustment under § 3B1.2 depends on factual determinations, which this court reviews for clear error. *United States v. Campbell,* 279 F.3d 392, 396 (6th Cir.2002). The defendant has the burden of proving, by a preponderance of the evidence. that he is entitled to the reduction. *United States v. Bartholomew,* 310 F.3d 912, 924 (6th Cir.2002).

Pursuant to § 3B1.2, a defendant may receive a four-level reduction for being a minimal participant or a two-level reduction for being a minor participant. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group," and a minor participant is one who "is substantially less culpable than the average participant," but whose role could not be described as minimal. U.S.S.G. § 3B1.2, cmt. note 3(A), 4. *See also United States v. Solorio,* 337 F.3d 580 (6th Cir.2003).

Cardenas–Velez has maintained that he was less culpable than his co-defendant and, consequently, should have received a two-point reduction in his sentence as a minor participant pursuant to U.S.S.G. § 3B1.2(b). In support of his position, defendant has pointed to the fact that Vega possessed the pass key which regulated access to the methamphetamine in the rented storage unit.

Although Vega possessed the pass key to the storage unit, that fact did not relegate Cardenas–Velez to the role of a minor participant. The evidence has indicated that defendant negotiated, coordinated and arranged the sale of substantial quantities of methamphetamine to the informant on three different occasions prior to the evening of his arrest. During those negotiations, the appellant advised the informant that he knew of the methamphetamine in the storage unit. Finally, on the evening of his arrest, Cardenas–Velez negotiated the drug deal with the officer posing as the Nashville buyer. The district court properly found that appellant was not a minor participant in the offenses.

■ The defendant has further maintained that the probation officer's presentence report resulted in reversible error because she included a confidential recommendation to the district court fingering Cardenas–Velez as the organizer of the offense and recommending a two-level enhancement in sentencing. The defendant has specifically argued that the confidential memorandum amounted to reversible error as violating presentence report procedures enunciated in the Federal Rules of Criminal Procedure, 18 U.S.C. § 3552, and U.S.S.G. § 6A1.1–1.3.

While the record is unclear concerning exactly when the defendant learned of the probation officer's recommendation, the evidence, nevertheless, indicated that Cardenas–Velez failed to object to this confidential communication during the hearing. The absence of a timely objection from the defendant, in this instance, resulted in a forfeiture subject to this Court's review for plain error. *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998), *cert. denied,* 526 U.S. 1030, 119

S.Ct. 1278, 143 L.Ed.2d 371 (1999) ("Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed.R.Crim.P. 52(b) before we may exercise our discretion to correct the error.").

In order for this Court to correct a lower court's sentencing decision, the objecting party must show: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Koeberlein,* 161 F.3d at 949; *see also United States v. Thomas,* 11 F.3d 620, 629–30 (6th Cir.1993).

Cardenas–Velez has failed to satisfy the stringent standards required by plain error review. The district court rejected the application of a leadership enhancement to defendant's sentencing determination. Accordingly, this Court declines to find plain error.

█ Finally, the appellant has maintained that the district court erred in sentencing him separately from his indicted co-conspirator, Roberto Vega. Without citing to any specific authority on behalf of his proposition, the defendant has, nevertheless, urged this Court to recognize that the sentencing in separate courts led to inconsistent terms of incarceration, thus violating the policy intent of the Federal Sentencing Guidelines.

Contrary to Cardenas–Velez's contention, sentencing him separately from Roberto Vega did not frustrate the policy goals of uniformity sought by the Sentencing Guidelines. The very purpose of the Sentencing Guidelines was to enable separate courts to treat similarly situated defendants equally across the nation. Indeed, Congress and the Sentencing Commission created the Sentencing Guidelines to provide "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. ch. 1, Pt. A (2002). Within the bounds of the Guidelines, however, courts have recognized the necessity of individualized sentencing as an important liberty interest. *See Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (asserting that judicial tradition requires the sentencing judge to "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue").

The defendant has asserted the district court improperly calculated his sentence in relationship to the sentence imposed on Roberto Vega. Such an assertion fails to comport with the record evidence in the instant case. Prior to sentencing Cardenas–Velez, Judge Gibbons was apprized of the sentence Judge O'Meara imposed on Roberto Vega. Out of a "desire for consistency," Judge Gibbons did not apply the weapons enhancement to Cardenas–Velez's sentence.

The record also disclosed that the district court adhered to the sentencing guidelines applicable to Cardenas–Velez, while remaining mindful of the sentence meted out for defendant's co-conspirator. Judge Gibbons reviewed the pre-sentencing report, which initially recommended a total offense level of 38 with a guideline imprisonment range of from 292 to 365 months. In an addendum, the presentence report applied a three-level reduction for Cardenas–Velez's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, recommending a total offense level of 35 with a guideline range of between 210 and 262

months. After removing the defendant's two-level weapon enhancement the subsequent offense level of 33 yielded a guideline range of between 168 and 210 months. The district court then granted the government's § 5K1.1 motion for a downward departure predicated on defendant's willingness to cooperate, thereby reducing defendant's offense level by 5 to 28, resulting in a sentence of 115 months. Judge Gibbons noted the leniency of the imposed sentence when she remarked:

> That is really not as much of a spread as ordinarily might be expected between one who co-operated and one who did not, but under the circumstances, I don't think I can go any lower than that. Frankly, that is a sentence substantially below what Mr. Cardenas–Velez would have received had his co-defendant not been sentenced pretty favorably.

At base, the defendant has urged this Court to find that Judge Gibbons erred in not departing further downward in comparison to Roberto Vega's sentence of 120 months, in light of appellant's willingness to cooperate. Yet, where the record indicates, as it does in the instant case, that the district court's decision not to depart from the guideline range was discretionary "under these circumstances," this Court does not have jurisdiction for an appeal. *United States v. Henderson* 209 F.3d 614, 617 (6th Cir.2000) (noting this Circuit's precedent that generally precludes appeals from decisions not to depart from the guideline range); *see also United States v. Owusu,* 199 F.3d 329, 349 (6th Cir.2000) (noting that the district court need not explicitly state that it is aware of its discretionary authority to depart downward; the record need only make clear the court's awareness of its discretion); *United States v. Rudolph,* 190 F.3d 720, 722 (6th Cir.1999) (noting that "[u]nless a district court mistakenly believes that it lacks the legal authority to depart below the guidelines range, this court may not review a district court's decision not to depart"); *accord United States v. Pruitt,* 156 F.3d 638, 650 (6th Cir.1998) ("A district court's discretionary refusal to depart downward is generally not appealable, unless the district court mistakenly believed it did not have legal authority to depart downward").

Consequently, this Court affirms the district court's sentencing determination.